**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| MARIE SHADOAN, | CASE NO. 10-CV-1796 JLS (DHB) |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| JANET NAPOLITANO; Does 1 through 50, inclusive, | (ECF No. 31) |
| Defendant. | |

Presently before the Court is Defendant Janet A. Napolitano's (Defendant) motion for summary judgment or, in the alternative, partial summary judgment. (MSJ, ECF No. 31.) Also before the Court are Plaintiff Marie Shadoan's (Plaintiff) opposition to Defendant's motion (Opp., ECF No. 38) and Defendant's reply to Plaintiff's opposition (Rep., ECF No. 40). The Court heard oral argument on September 20, 2012, and the matter was thereafter taken under submission. Having considered the parties' arguments and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion.

**BACKGROUND**

Due to the extensive factual background of this case, described in detail throughout the parties' pleadings, the Court recites those facts here only where necessary to explain its reasoning. Plaintiff joined the Special Agent in Charge (SAC), San Diego Cyber Crimes Group of the Department of Homeland Security on April 23, 2009. (First Amended Complaint (FAC), ECF No. 9 ¶¶ 10, 13.) At

1 that time, Maurice Wrighten (Wrighten), the Group Supervisor (GS), assigned Special Agent Aida
2 Vasquez (Vasquez) to be Shadoan's Field Training Officer (FTO). (FAC ¶¶ 13-14.) The majority of
3 Plaintiff's allegations involve either GS Wrighten or FTO Vasquez.

4 Plaintiff, who is Caucasian, alleges that she was offended and humiliated by Vasquez's name-
5 calling and inappropriate comments. (FAC ¶¶ 14-16.) During the first weeks of Plaintiff's
6 employment in April and early May 2009, Vasquez made comments that Plaintiff spoke Spanish,
7 looked Mexican, and did not look like "a white girl." (Opp. Exh. 1 pp. 51, 54-55.) Vasquez also gave
8 Plaintiff the nickname "Mari Guadalupe." (*Id.* at 54, 61, 74.) According to Vasquez, it was common
9 for agents to have Hispanic nicknames and she was unaware that Plaintiff was offended. (MSJ Exh.
10 10, pp. 36-37.) In another incident on June 19, 2009, Vasquez commented that Plaintiff watched
11 pornography. (Opp. Exh. 1 pp. 110-11.) Vasquez also referred to a male coworker as Plaintiff's
12 boyfriend. (*Id.* at 111-12.)

13 On May 2, 2009, Plaintiff was assigned to shadow Vasquez on port duty. (FAC ¶ 18.)
14 Plaintiff alleges that Vasquez showed up late and later reprimanded Plaintiff for failing to show any
15 interest in her duties. (*Id.*) Defendant alleges that Plaintiff was texting on her phone and declined to
16 fingerprint a suspect when asked. (MSJ p. 2-3.) Plaintiff admits to texting, but alleges that she
17 declined to fingerprint only because she wanted to observe the procedure. (MSJ Exh. 19 pp. 213-14.)

18 On May 7, 2009, Plaintiff did not remain at work for a briefing and could not be reached by
19 telephone. (MSJ p. 2; Opp. Exh. 1 pp. 97-99.) At a meeting the next day, Vasquez and Plaintiff
20 discussed the miscommunication and another incident where Plaintiff wore sandals to the courthouse.
21 (Opp. Exh. 1 pp. 93-94, 100.) Vasquez allegedly stated that Plaintiff's job and evaluation were in
22 Vasquez's hands. (FAC ¶ 19.) Details of this meeting are contentious, but a witness states that
23 Plaintiff was "pretty calm" and that she was neither "disrespectful" nor said anything "inappropriate."
24 (Opp. Exh. 6 pp. 20-21.) Plaintiff admits that she "may have come off rude." (MSJ Exh. 19 p. 102.)
25 Plaintiff was also told at this meeting that she would have to attend weekly interagency meetings.
26 (Opp. Exh. 1 p. 105.) Plaintiff was so required because she allegedly tended to leave immediately
27 without interacting with agents from other law enforcement agencies. (MSJ Exh. 12 p. 66.)

28

1    On July 13, 2009, Vasquez told Plaintiff that she wanted to talk to her "woman to woman" about her performance. (FAC ¶ 19.) Around July 30, 2009, Plaintiff alleges that Vasquez was "badmouthing the Plaintiff," but does not detail what was said. (FAC ¶ 26; MSJ Exh. 19 p. 251.) On August 24, 2009, Plaintiff was reprimanded for telling a coworker that her work "sucked" and was the "same shit different day." (FAC ¶ 28; MSJ Exh. 19 p. 180.) On August 26, 2009, Plaintiff was taken off the schedule to attend training and allegedly replaced by either Vasquez or male coworkers. (FAC ¶ 29; Opp. Exh 1. p. 205.)

On September 3, 2009, Plaintiff complained to Wrighten about Vasquez's comments and requested a transfer to a new FTO. (FAC ¶ 30.) The following day, Wrighten advised Plaintiff that she could not file an EEO complaint because she did not tell Vasquez that her comments were offensive. (FAC ¶ 32.) On September 9, 2009, Wrighten informed Vasquez that her comments offended Plaintiff, and Vasquez made no further offensive comments. (MSJ p. 5.)

On September 8, 2009, Plaintiff was assigned to FTO Don Buffington (Buffington), who Plaintiff alleges was inexperienced and unqualified. (FAC ¶ 33.) Defendant alleges the more experienced agents in the unit were not chosen because they were too busy to take on the assignment or set to transfer soon. (MSJ p. 4.) Thereafter, Wrighten was informed that Plaintiff's performance under Buffington was unsatisfactory for allegedly disregarding or ignoring instructions and wasting the time of others. (MSJ Exh. 11 p. 53; MSJ Exh. 12 pp. 66-67.) Plaintiff also allegedly put a sticky note on a case file describing it as "BS" but she denies the incident. (FAC ¶ 38; Opp. Exh. 1 p. 182-83.)

On September 9, 2009, Wrighten received an email soliciting input about Plaintiff's scheduled promotion. (MSJ p. 5.) On September 24, 2009, Wrighten informed Plaintiff that he would not be recommending her for promotion. (FAC ¶ 34.) Wrighten contacted Associate Legal Advisor Michele Kenney (Kenney) to prepare a letter memorializing his decision. (MSJ p. 6.) Wrighten also contacted court clerks regarding Plaintiff's behavior, and was informed that Plaintiff did not do anything unprofessional but "acted like a snob." (MSJ Exh. 22.)

On September 25, 2009, Wrighten presented the non-promotion letter to Plaintiff. (FAC ¶ 37.) Immediately after, Wrighten and Plaintiff met with Assistant Special Agent in Charge (ASAC)

1  Lorraine Concha (Concha) to discuss the letter.  (FAC ¶ 39.)  Details of this meeting are contentious,
2  but Plaintiff alleges that Concha told Plaintiff she needed to learn how to get along with "all people
3  of color" if she wanted to stay.  (FAC ¶ 39.)  Defendant alleges that Plaintiff rolled her eyes, cut the
4  ASAC off, said she disagreed with the decision, and got up to leave.  (MSJ p. 6.)

5  Following this meeting, Concha and Wrighten met with SAC Miguel Unzueta (Unzueta).  (*Id.*)
6  After discussing Plaintiff's conduct, Unzueta decided to terminate Plaintiff.  (*Id.*)  Kenney prepared
7  a letter terminating Plaintiff for unsatisfactory conduct, which Unzueta issued on November 13, 2009.
8  (*Id.*)  This termination is the basis for Plaintiff's retaliation claim, as set forth in her First Amended
9  Complaint.  (FAC ¶ 46.)

10  There are other incidents that occurred prior to and throughout the litigation which are at issue
11  in this case.  These incidents will be described here and referenced below.  One incident involved
12  Plaintiff and Vasquez.  Plaintiff alleges that Vasquez did not provide Plaintiff with adequate training
13  and assigned her to secretarial duties.  (FAC at ¶ 17.)  Defendant alleges that all Cyber Crimes
14  employees were required to make copies or deliver documents from time to time, and that nobody
15  except Plaintiff objected to such "secretarial work."  (MSJ p. 2.)  Plaintiff also alleges that a Caucasian
16  male probationary agent, Pete Oleson (Oleson), was treated more favorably compared to her.  (Opp.
17  p. 3.)  Oleson received thirteen Conduct & Efficiency Reports from Vasquez while Plaintiff received
18  none.  (Opp. Exh. 7 p. 65.)  The only report on Plaintiff was filled out by Wrighten, and never seen
19  by Plaintiff until after her termination.  (Opp. Exh 12; Opp. Exh. 1 p. 138.)

20  Another incident involved Plaintiff and Wrighten.  When first meeting Plaintiff in April 2009,
21  Wrighten allegedly stated that Plaintiff should not have been placed in his group and that he was
22  unsure of why she was there.  (FAC ¶ 13.)  According to Wrighten, he was expressing a gender-
23  neutral opinion that new agents would benefit from being assigned to a border unit before joining the
24  specialized Cyber Crimes unit.  (Opp. Exh. 19 pp. 56-57.)  Later, in June of 2009, Wrighten allegedly
25  stated to Plaintiff that she was just "fucking around over there."  (Opp. Exh. 1 pp. 220-21.)

26  A final incident occurred after Plaintiff's termination.  Plaintiff alleges that the probationary
27  agent who replaced her, an African-American male, was also subject to racial and sexual
28  discrimination.  (Opp. p. 8; Opp. Exh. 7 pp. 79-84.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is "genuine" if a reasonable jury would be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Ninth Circuit has set a high standard for granting summary judgment in employment discrimination cases. "We require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the fact-finder, upon a full record." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

///

**ANALYSIS**

**1. Plaintiff's Claims**

In the FAC, Plaintiff brings claims of sex employment discrimination, race employment discrimination, and retaliation under Title VII. (FAC pp. 11-15.) Plaintiff pursues several theories of discrimination: (1) disparate treatment sex discrimination (FAC ¶ 60); (2) disparate treatment race discrimination (FAC ¶ 69); (3) sexual hostile work environment (FAC ¶ 58); (4) racial hostile work environment (FAC ¶ 69); and (5) retaliation for reporting sex and race discrimination (FAC ¶ 78). Defendant has filed a motion for summary judgment or partial summary judgment on all claims.

**2. Exhaustion of Administrative Remedies**

Defendant contends that, because Plaintiff has failed to exhaust her administrative remedies as to several of the alleged incidents before bringing a Title VII suit, Plaintiff may not pursue her claims based on these incidents. (MSJ p. 14.) For the Court to have subject matter jurisdiction over Plaintiff's Title VII claims, Plaintiff must have exhausted her administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). "Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC . . . thereby affording the agency an opportunity to investigate the charge." *Id.* (citing 42 U.S.C. § 2000e-5(b)).

*A. Incidents Absent in EEO Complaint*

Defendant contends that Plaintiff is precluded from pursuing claims on the thirteen incidents she added to her underlying complaint because she failed to allege these additional incidents in her EEOC complaint.[1] (MSJ p. 15.) A court's "[s]ubject matter jurisdiction extends over all allegations of discrimination that either '[falls] within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *B.K.B.*,

---

[1] The thirteen additional incidents are as follows: (1) Vasquez called Plaintiff "FNGI," an acronym for "Fucking New Girl," around ten times; (2) Vasquez used inappropriate sexual language in the workplace; (3) Vasquez told Plaintiff she was "too new to have her own opinion"; (4) Vasquez assigned Plaintiff secretarial work; (5) on May 8, 2009, Vasquez told Plaintiff that her job and evaluation were in Vasquez's hands; (6) on May 8, 2009, Vasquez required Plaintiff to attend weekly ICAC meetings; (7) after the May 2, 2009 port duty, Vasquez reprimanded Plaintiff; (8) in June 2009, Wrighten stated that he was surprised because he thought Plaintiff was just "f'ing around over there"; (9) on July 24, 2009, Plaintiff was sent to an unfamiliar area without emergency equipment; (10) Plaintiff was reprimanded for saying an assignment was a waste of time; (11) on August 26, 2009, Wrighten told Plaintiff that Vasquez was going to a training in Plaintiff's place; (12) on September 25, 2009, Concha told Plaintiff that she would have to learn how to get along with all people of color; and (13) Defendant opposed Plaintiff's unemployment benefits. (MSJ Exh. 16.)

276 F.3d at 1100 (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)). In determining the scope of a court's jurisdiction, a court must "construe the charge liberally," *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990), and may consider "allegations occurring not only before, but also after the filing of [the] EEOC charge." *Id.* at 1456–57 (citing *Chung v. Pomona Valley Cmty. Hosp.*, 667 F.2d 788, 792 (9th Cir. 1982)); *see also Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973) ("When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC.").

The Ninth Circuit has previously considered factors such as "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations which discrimination is alleged to have occurred." *B.K.B.*, 276 F.3d at 1100. The standard is one of "utmost liberality" and a plaintiff's claims will be considered "to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case as reflected in the plaintiff's factual allegations and [her] assessment as to why the employer's conduct is unlawful." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (internal quotations omitted).

In her EEOC charge, Plaintiff complained of "the unprofessional and discriminatory behavior demonstrated by Ms. Aida Vasquez as well as the unfair treatment [she] received from [her] supervisor, Mr. Maurice Wrighten." (MSJ Exh. 9.) The incidents that Plaintiff has added in her complaint occur within a similar timeframe during Plaintiff's employment, involve the same perpetrators, take place at the same location of employment, and allegedly involve the same basis of discrimination against the Plaintiff due to her race and sex. Because the Court is required to construe the EEOC charges "with utmost liberality," the Court concludes that the additional incidents are reasonably related and consistent with Plaintiff's original theory of the case. Accordingly, Defendant's motion on this basis is **DENIED**.

///

///

***B. Incidents Prior to July 21, 2009***

Defendant contends that Plaintiff is also precluded from pursuing claims as to incidents prior to July 21, 2009, for failing to timely contact an EEO counselor.[2] (MSJ p. 14.) The first step in the EEO administrative exhaustion process is to consult a counselor at the agency's EEO office. 29 C.F.R. § 1614.105(a)(1); *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). Federal regulations require a federal employee to raise a discrimination claim with an EEO counselor within forty-five days of an adverse employment action. *Id.* This statutory requirement is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Johnson v. U.S. Treasury Dept.*, 27 F.3d 415, 416 (9th Cir. 1994).

Here, both parties agree that Plaintiff was terminated on November 13, 2009, and that Plaintiff contested her termination through the EEO Office on November 24, 2009. (MSJ pp. 6-7; Opp. p. 7.) Estoppel applies because Wrighten told Plaintiff on September 4, 2009, that she could not file an EEO claim. (MSJ p. 14.) Therefore, any incidents that occurred prior to July 21, 2009, forty-five days before the alleged September 4, 2009 statement, were not timely raised by the Plaintiff.

Plaintiff contends that these incidents are admissible under the continuing violations doctrine. (Opp. p. 9.) Under the continuing violations doctrine, evidence of violations occurring outside the statutory time limit may nonetheless be considered. *See Morgan*, 232 F.3d at 1015, rev'd, 536 U.S. 101 (2002). However, this doctrine draws a distinction between discrete acts and hostile environment claims. *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002). Discrete acts, such as "termination, failure to promote, denial of transfer, or refusal to hire," are individually actionable and thus inherently different from hostile environment claims, which by "[t]heir very nature involve[] repeated conduct." *Id.* at 114-15. A district court has subject-matter jurisdiction over claims involving discrete acts only if the acts actually occurred during the statutory period. *Id.* at 117. For hostile environment claims, however, "[p]rovided that an act contributing to the claim occur[red] within the filing period," the district court may consider the "entire period of the hostile environment . . . for the purposes of determining liability." *Id.* Because Plaintiff alleges that these incidents contribute to her hostile

---

[2]These incidents are: (1) Vasquez's racial comments; (2) the Hispanic nickname; (3) the porn comment; and (4) Wrighten's April 2009 Cyber Crimes comment. (MSJ p. 14.)

1 environment claims, the Court may properly consider these incidents if at least one act contributing
2 to the hostile environment claims occurred within the statutory period.

3 Plaintiff alleges several incidents contributing to her hostile environment claims that occur
4 within the statutory period. Plaintiff alleges that on July 24, 2009, she was sent out to work in an area
5 and group she was not familiar with, and perceived that she was being set up for failure. (FAC ¶ 25.)
6 Plaintiff also alleges that on July 30, 2009, she was informed that Vasquez had been "badmouthing"
7 her to male co-workers. (FAC ¶ 26.) Plaintiff further alleges that on August 26, 2009, she was
8 informed by Wrighten that Vasquez would be sent to train in her place. (*Id.*) Finally, Plaintiff alleges
9 that she was excluded from meetings on October 16, 2009, and October 19, 2009. (FAC ¶¶ 41-42.)
10 Therefore, the Court concludes that the incidents prior to July 21, 2009, are also properly before the
11 Court. Accordingly, Defendant's motion for summary judgment on this basis is **DENIED**.

### *C. Non-Promotion of September 25, 2009*

13 Plaintiff concedes that her non-promotion on September 25, 2009, is time-barred. (Opp. p. 10.)
14 Non-promotion is a discrete act of discrimination, and therefore must be timely raised in order to be
15 considered by the court. *See AMTRAK*, 536 U.S. at 117. However, Plaintiff contends that equitable
16 estoppel applies to her non-promotion because "Wrighten told the Plaintiff that she could not file an
17 EEO complaint and the Plaintiff relied on that representation." (Opp. p. 10.)

18 Equitable estoppel does not apply to Plaintiff's non-promotion because she could not have
19 relied on Wrighten's advice. "A finding of equitable estoppel rests on the consideration of a
20 non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the
21 defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant,
22 or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3)
23 the extent to which the purposes of the limitations period have been satisfied." *O'Donnell v. Vencor*
24 *Inc.*, 466 F.3d 1104 (9th Cir. 2006) (citing *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir.
25 2000). Plaintiff states in her deposition that she was discussing "examples of why [she] wanted [her]
26 FTO to be changed" with Wrighten when he told her it was "an EEO discussion." (Opp. Exh. 1 pp.
27 126-27.) Specifically, they discussed "the way [Vasquez] treated [Plaintiff]." (*Id.* at 127.) The next

day, on September 4, 2009, Wrighten allegedly came back, said he consulted with an attorney, and told Plaintiff that she could not file an EEO complaint. (FAC ¶ 32.)

Judging from the record, there is no indication that Wrighten's advice related in any way to Plaintiff's non-promotion. Plaintiff acknowledges in her complaint that Wrighten told her she could not bring an EEO complaint because she "had not made FTO Vasquez aware that her comments were offensive." (*Id.*) Plaintiff further states that the EEO discussion only came up in relation to "the things that [Vasquez] was doing and saying and how [Plaintiff] was being treated." (Opp. Exh. 1 p. 154.) Therefore, the Court concludes that equitable estoppel does not apply because Wrighten's advice was not applicable to Plaintiff's non-promotion and she could not rely on it. Accordingly, the Court **GRANTS** Defendant's motion as to Plaintiff's non-promotion because Plaintiff failed to timely raise the incident.[3]

### 3. Hostile Work Environment Claims

Plaintiff alleges sex and race discrimination in violation of Title VII, 42 U.S.C. §§ 2000e, et seq. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" based on the employee's race, sex, or other protected characteristic. 42 U.S.C. § 2000e-2(a)(1). Title VII guarantees employees "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). To make out a hostile work environment claim premised on either race or sex, a plaintiff must show: "(1) that [she] was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cnty. of L.A.,* 349 F.3d 634, 642 (9th Cir. 2003).

A totality of the circumstances test is used to determine whether a plaintiff's allegations make out a colorable hostile work environment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

---

[3]Defendant further argues that only Plaintiff's termination is a discrete adverse employment action. (MSJ pp. 17-18.) Plaintiff concedes in oral argument that only her termination and her non-promotion would qualify as discrete actions. Because the Court has determined that Plaintiff's non-promotion was not timely raised and equitable estoppel does not apply, Plaintiff's termination is the only actionable adverse employment action remaining in this case.

Such circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* "[S]imple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted). Rather, the offensive conduct "must be extreme to amount to a change in the terms and conditions of employment." *Id.* When assessing the objective portion of a plaintiff's claim, the court assumes the perspective of the reasonable victim. *See Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991) ("[A] female plaintiff states a prima facie case of hostile environment sexual harassment when she alleges conduct which a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment."). To survive summary judgment on a hostile work environment claim, a plaintiff must show a genuine factual dispute as to: (1) whether a reasonable woman would find the workplace so objectively and subjectively hostile toward her as to create an abusive working environment; and (2) whether the defendant failed to take adequate remedial and disciplinary action. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).

### *A. Sexual Hostile Environment Claim*

In support of her sexual hostile environment claim, Plaintiff alleges: (1) being called "fucking new girl"; (2) a reference to Plaintiff's coworker as her boyfriend; (3) being accused of watching pornography; (4) being subjected to vulgar and sexual language; (5) Vasquez stating that she wanted to punch Plaintiff's face for being pretty and stuck up; and (6) Vasquez wanting to talk to Plaintiff "woman to woman." In support of both sexual and racial discrimination claims, Plaintiff also alleges that: (1) she was subject to different training standards; and (2) the probationary agent that replaced the Plaintiff was also subject to discriminatory comments about his race and gender by the same supervisors.[4] (Opp. p. 13.)

Plaintiff successfully demonstrates a genuine factual dispute as to whether a reasonable person

---

[4]Plaintiff also alleges being told that she did not belong and that she was too new to have an opinion, but fails to explain how these statements were motivated by race or gender.

- 11 -                                                                    10cv1796

would find the workplace so objectively and subjectively hostile toward her sex as to create an abusive working environment. There is at least some evidence indicating that Vasquez harassed Plaintiff because of her sex. (Opp. Exh. 1 pp. 210-211; Opp. Exh. 4 p. 98.)  And even though Defendant alleges that this harassment ended after Plaintiff complained to Wrighten on September 3, 2009, there is further evidence that Plaintiff was also subject to different training standards compared to Oleson, the male probationary agent. For example, Plaintiff did not receive any student evaluation reports from Vasquez while Oleson received thirteen. (Opp. Exh. 5 p. 38; Opp. Exh. 10 (filed under seal).) And while Defendant alleges that nobody in the unit was getting such reports prior to July 2009 (Rep. p. 9.), this does not explain why Plaintiff did not receive reports from July 2009 until her termination in November 2009. The only report prepared for Plaintiff was filled out by Wrighten, and never seen by Plaintiff until after her termination. (Opp. Exh 12; Opp. Exh. 1 p. 138.)

Here, Plaintiff adequately establishes that she may have been subject to disadvantageous terms or conditions of employment because of her sex. *See Harris*, 510 U.S. at 25 (stating that the critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed"). Therefore, the Court concludes that Plaintiff establishes a genuine factual dispute as to the sexual hostility of her workplace. Accordingly, the Court **DENIES** Defendant's motion as to Plaintiff's hostile work environment claim for sex discrimination.

### *B. Racial Hostile Environment Claim*

In support of her racial hostile environment claim, Plaintiff alleges: (1) being subjected to racial remarks that she looked like a Mexican or did not look like a white girl; (2) being assigned a Hispanic nickname; and (3) being told she would not be promoted because she "needed to learn how to get along with all people of color." (Opp. p. 12.) Plaintiff also alleges that: (1) she was subject to different training standards; and (2) the probationary agent that replaced the Plaintiff was also subject to discriminatory comments about his race and gender by the same supervisors. (Opp. p. 13.)

Plaintiff fails to demonstrate a genuine factual dispute as to whether a reasonable person would find the workplace so objectively and subjectively hostile toward her race as to create an abusive working environment. Although there is some evidence of racial harassment, it does not rise to a level

beyond "simple teasing." *Faragher*, 524 U.S. at 788. There is also no evidence of any training disparity based on race, as both Plaintiff and Oleson were both Caucasian. Further, Plaintiff's alleged evidence of subsequent discrimination against the African-American agent who replaced her is irrelevant to her own racial discrimination claim. Plaintiff cites to *Heyne v. Caruso* for the proposition that "evidence of an employer's treatment of other employees in similar situations as the plaintiff is relevant in proving the employer's motive or intent in its treatment of the plaintiff." (Opp. p. 13.) However, *Heyne* states that "an employer's conduct tending to demonstrate hostility towards a **certain group** is both relevant and admissible where the employer's general hostility towards **that group** is the true reason behind firing an employee who is a **member of that group**." 69 F.3d 1475, 1479 (9th Cir. 1995) (emphasis added). *Heyne* is inapplicable because any alleged evidence of subsequent discrimination against the African-American probationary agent would not tend to demonstrate racial hostility against the Caucasian Plaintiff.

Plaintiff's remaining allegation of being told she "needed to learn how to get along with all people of color" does not rise to the level of creating a hostile work environment. (Opp. p. 12.) Plaintiff provides no support for how such a statement can be characterized as physically threatening, humiliating, or even a mere "offensive utterance." *See McGinest*, 360 F.3d at 1113. Plaintiff fails to demonstrate a genuine factual dispute as to whether a reasonable person would find the workplace so objectively and subjectively hostile toward her race as to create an abusive working environment. Therefore, the Court **GRANTS** Defendant's motion as to Plaintiff's racial hostile environment claim.

**4. Disparate Treatment Discrimination**

The Supreme Court has articulated a three-step burden shifting framework to analyze federal employment discrimination claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). Under this framework, the plaintiff must first establish a prima-facie case of discrimination under Title VII; the defendant must then offer a legitimate, non-discriminatory basis for the action taken; if the defendant succeeds, the plaintiff must then prove that defendant's proffered reason is a pretext for the action. *Id.* at 802. If the plaintiff's evidence is lacking, summary judgment is proper for the defendant. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1997).

To establish a prima facie case of employment discrimination under Title VII, the plaintiff

must prove that (1) she belongs to a protected class; (2) she was qualified for the job, promotion, or other benefit at issue; (3) she was subject to an adverse employment action; and (4) similarly-situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802-04; *Fonsesca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). A prima facie case of discrimination requires "a Title VII plaintiff [to] offer evidence that 'gives rise to an inference of unlawful discrimination.'" *Palmer v. Pioneer Inn Associates, Ltd*, 338 F.3d 981,984 (9th Cir. 2003) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Davis v. Team Elec. Co.*, 520 F.3d. 1080, 1089 (9th Cir. 2008).

A plaintiff can also demonstrate a triable issue based on direct and circumstantial evidence of discriminatory intent outside the *McDonnell Douglas* framework. "[W]hen responding to a summary judgment motion . . . [the plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]." *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007) (citing *McGinest*, 360 F.3d at 1122). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221. However, when circumstantial evidence is offered, it must be "specific" and "substantial." *Id.* at 1222.

*A. Sex Discrimination Claim*

Defendant contends that Plaintiff's sexual discrimination claim fails because she cannot establish the fourth element of her prima facie case: evidence of discrimination. However, as discussed above, Plaintiff has shown at least some evidence that Oleson, the male probationary agent, was subject to more favorable training standards. Further, Plaintiff has also established that her position was filled by a male agent after her termination. "Under *McDonnell Douglas*, to show disparate treatment under Title VII [plaintiff] must first establish a prima facie case of discrimination. Specifically, she must show that (1) she belongs to a protected class; (2) she was

qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated men were treated more favorably, or her position was **filled by a man**." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (emphasis added). Therefore, Plaintiff satisfies the "minimal" burden necessary to establish a prima facie case for Title VII on summary judgment. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Accordingly, the Court **DENIES** Defendant's motion against Plaintiff's sex discrimination claim.

### *B. Race Discrimination Claim*

With regard to Plaintiff's race discrimination claim, Plaintiff does not establish evidence of discrimination. Oleson, the male probationary agent, is not a similarly situated individual outside her protected class because both Plaintiff and Oleson are Caucasian, and Plaintiff does not point to any other evidence of favorable treatment to people outside her racial class.

Plaintiff also cannot demonstrate a triable issue based on direct and circumstantial evidence of discriminatory intent. Plaintiff alleges the following as direct or circumstantial evidence of Defendant's intent to discriminate based on her race: (1) Vasquez's comments that Plaintiff looked Mexican; (2) the Hispanic nickname; and (3) the statement that Plaintiff needed to learn how to get along with "all people of color." (Opp. pp. 12-13.) However, the record shows that Defendant promptly responded to Vasquez's allegedly offensive conduct when Plaintiff reported it on September 3, 2009. (MSJ Exh. 19 p. 147.) Most of these alleged incidents were isolated and did not recur once Plaintiff brought them to the attention of her supervisor. As to the "people of color" statement, Plaintiff does not explain how a statement that seems to promote cooperation between people of different nationalities is evidence of an intent to discriminate based on race. There is no direct evidence of discriminatory intent, and the circumstantial evidence is not "specific" or "substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) ("Circumstantial evidence . . . must be 'specific and 'substantial' to create a triable issue with respect to whether the employer intended to discriminate."). Accordingly, the Court **GRANTS** Defendant's motion against Plaintiff's race discrimination claim.

///

///

**5. RETALIATION**

Plaintiff alleges retaliation in violation of Title VII, 42 U.S.C. § 2000e-3.  Title VII makes it "unlawful . . . for an employer to discriminate against any . . . employee[] . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he had made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

The *McDonnell Douglas* framework also applies to retaliation claims under Title VII.  To establish a prima facie case of retaliation under Title VII, a plaintiff must prove that (1) she engaged in a protected activity; (2) she suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision.  *See Villiarimo*, 281 F. 3d at 1064.  Protected activities include: (1) opposing any practice made an unlawful employment practice by Title VII; and (2) participating in a statutorily authorized proceeding.  *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004).

*A. Protected EEO Activity*

Plaintiff alleges that she was retaliated against for reporting Vasquez's comments on September 3, 2009.  (FAC ¶¶ 46, 51.)  The issue here is whether Plaintiff could have reasonably perceived Vasquez's comments as Title VII discrimination.  Title VII protects only those employees from retaliation who "oppose what they reasonably perceive as discrimination under the Act."  *Learned v. Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988).  The reasonableness of a plaintiff's belief that an unlawful employment practice occurred is assessed using an objective standard that takes into consideration the limited knowledge of most plaintiffs.  *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994).  "Offhand comments" and "isolated incidents (unless extremely serious)" do not amount to such discrimination.  *Clark County School District v. Breeden*, 532 U.S. 268, 271 (2001); *see also EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009) ("If a person has been subjected to only an isolated incident, a complaint about that incident does not constitute protected activity unless a reasonable person would believe that the isolated incident violated Title VII.").

The Court finds that Plaintiff could have reasonably perceived Vasquez's comments as discrimination.  Vasquez's allegedly repeated comments that Plaintiff "didn't look like a white girl"

1  or asking "are you sure you don't speak Spanish," (Opp. Exh. 1 pp. 48-49, 54; MSJ Exh. 19 p. 57), 
2  combined with a Hispanic nickname that Plaintiff found offensive, (Opp. Exh. 1 p. 72), could have 
3  reasonably been perceived as discrimination by the Plaintiff because she was the sole Caucasian 
4  female in the unit.  Although Defendant argues that the Hispanic nickname could not reasonably have 
5  been perceived as discrimination because others in the unit also had such nicknames, Plaintiff alleges 
6  that she was unaware of this fact.  (MSJ Exh. 19 p. 83.)  These racial comments were also made 
7  together with sexual comments, such as Vasquez's wisecrack that Plaintiff watched pornography on 
8  the weekend and her reference to Plaintiff's coworker as her "boyfriend."  Given the context, and 
9  taking into account the "limited knowledge possessed by most Title VII plaintiffs about the factual 
10 and legal bases of their claims," *Moyo v. Gomez*, 40 F.3d at 985, Plaintiff could have reasonably 
11 perceived herself as opposing discrimination under Title VII.  Given the high standard for summary 
12 judgment of employment discrimination claims, *Schnidrig*, 80 F. 3d at 1410, the Court concludes that 
13 a dispute of material fact exists as to whether Plaintiff's September 3, 2009, complaint was protected 
14 EEO activity.  Accordingly, the Court **DENIES** Defendant's motion on this basis.

15     ***B. Pretext***

16 Defendant further contends that, even assuming the September 3, 2009, complaint was 
17 protected EEO activity, summary judgment would still be appropriate because Defendant had a 
18 legitimate, nondiscriminatory reason for the challenged termination and Plaintiff cannot establish 
19 pretext.  (MSJ p. 21.)  After a plaintiff establishes a prima facie case of retaliation under Title VII, 
20 the burden shifts to the defendant to offer a legitimate, non-discriminatory basis for the action 
21 taken.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  If the defendant succeeds in articulating a 
22 legitimate, nondiscriminatory reason, the plaintiff must "show that the articulated reason is 
23 pretextual 'either directly by persuading the court that a discriminatory reason more likely 
24 motivated the employer or indirectly by showing that the employer's proffered explanation is 
25 unworthy of credence.'"  *Chuang v. University of Cal. Davis*, 225 F.3d 1115 (9th Cir. 2000) 
26 (quoting *Burdine*, 450 U.S. at 256).  When a plaintiff presents direct evidence that the proffered 
27 explanation is a pretext for discrimination, "very little evidence" is required to avoid summary 
28 judgment.  *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009).  But, if a plaintiff relies on

circumstantial evidence, "that evidence must be specific and substantial to defeat the employer's motion for summary judgment." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).

Here, Plaintiff was allegedly terminated because of her "unprofessional attitude, lack of respect and [her] inability to work well with others in the workplace." (MSJ Exh. 7.) Specifically, Plaintiff's termination letter states the following reasons: (1) the incident where Plaintiff left early; (2) the incident where Plaintiff showed little interest in port duty; (3) the meeting where Plaintiff was rude to Vasquez; (4) Plaintiff's unprofessional conduct toward the U.S. Attorney's clerk's office; (5) Plaintiff's note on a file stating "[t]his is a BS case"; (6) various statements by Plaintiff complaining about her assignments and FTO; and (7) wasting her co-workers' and supervisor's time by asking for unnecessary advice. (MSJ Exh. 7.)

Plaintiff points to circumstantial evidence that Defendant's reason was "unworthy of credence," because GS Wrighten did not investigate the reasons stated in her termination letter, which occurred prior to Plaintiff's September 3, 2009, complaint to Wrighten, until after the complaint had occurred. (Opp. p. 22.) Specifically, Plaintiff alleges that Wrighten: (1) did not interview Jason Dunham about the port duty incident until September 25, 2009; (2) did not solicit information from the clerk's office until September 25, 2009; and (3) did not request Vasquez and Buffington to document Plaintiff's performance deficiencies until September 8, 2009. (*Id.*)

Plaintiff further establishes that at least some of Defendant's reasons for her termination are "unworthy of credence." For example, Plaintiff's alleged lack of interest in shadowing Vasquez in port duty is at least partly attributable to Vasquez's own late arrival. (Opp. Exh. 5 pp. 58-59.) As to the meeting where Plaintiff was allegedly rude to Vasquez, a witness stated that Plaintiff's tone and demeanor in the meeting were "pretty calm" and that she was neither "disrespectful" nor "inappropriate." (Opp. Exh. 6 pp. 20-21.) Further, although the termination letter states that Plaintiff "acted unprofessionally" towards the U.S. Attorney clerks, the actual email from the clerk's office states that Plaintiff "didn't do anything unprofessional, she just acted like a snob!" (Opp. Exh. 22.) Finally, some of Plaintiff's coworkers have stated that Plaintiff was a good employee and acted professionally. (Opp. Exh. 4 pp. 24, 87; Opp. Exh. 7 p. 270; Opp. Exh.

1  6 p. 24.) While this evidence is not overwhelming, it is enough to survive summary judgment.

2  Therefore, this Court concludes that a dispute of material fact exists as to whether
3  Defendant's legitimate, nondiscriminatory reason is pretextual. Accordingly, the Court **DENIES**
4  Defendant's motion on this basis.

5  **6. Vicarious Liability**

6  Defendant contends that, because Vasquez was Plaintiff's coworker, Defendant cannot be
7  held liable as an employer because Plaintiff cannot prove negligence. (MSJ p. 23.) An employer
8  is vicariously liable under Title VII for a hostile environment created by a supervising employee.
9  *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher*, 524 U.S. at 807. Where the
10 harassment was by a co-employee rather than a supervising employee, a plaintiff must show more,
11 such as employer negligence in responding to the plaintiff's complaints. *Swinton v. Potomac*
12 *Corp.*, 270 F.3d 794, 803 (9th Cir. 2001).

13 Plaintiff contends that, because Vasquez was responsible for Plaintiff's training as her
14 FTO, Vasquez had sufficient supervisory authority for Defendant to be held vicariously liable.
15 (Opp. p. 24 n.10.) Under Title VII, "[a]n employer is vicariously liable for actions by a supervisor
16 who has 'immediate (or successively higher) authority over the employee.'" *Dawson v. Entek*
17 *Int'l*, 630 F.3d 928 (9th Cir. 2011) (citing *Faragher*, 524 U.S. at 807). "This distinction 'is not
18 dependent upon job titles or formal structures within the workplace, but rather upon whether a
19 supervisor has the authority to demand obedience from an employee.'" *Id.* (quoting *McGinest*, 360
20 F.3d at 1119 n.13). Therefore, if Vasquez engaged in supervision of or had authority over
21 Plaintiff, she is deemed a supervisor even if the Defendant did not define her role in that way**.**

22 Here, there is evidence that Vasquez had at least some authority over Plaintiff. For
23 example, after the May 2, 2009, port duty incident, Vasquez met with Plaintiff to discuss issues
24 with that assignment. (Opp. Exh. 1 pp. 100-03.) Further, training guidelines state that an assigned
25 FTO "must periodically evaluate the SA trainee's performance." (Plaintiff's OJT&E Handbook,
26 ECF No. 37 (filed under seal).) Therefore, the Court concludes that a dispute of material fact
27 exists as to whether Vasquez was a supervising employee. Accordingly, the Court **DENIES**
28 Defendant's motion on this basis**.**

**CONCLUSION**

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment. The Court **GRANTS** the motion as to Plaintiff's racial hostile environment claim and race discrimination claim. The Court **DENIES** the motion as to Plaintiff's sexual hostile environment claim, sex discrimination claim, and retaliation claim.

**IT IS SO ORDERED**.

DATED: October 2, 2012

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge